Alfred C. OLIVER, Appellant,

v.

BOARD OF GOVERNORS, KENTUCKY BAR ASSOCIATION, Appellee.

No. 88–SC–1013–KB.

Supreme Court of Kentucky.

Nov. 9, 1989.

David C. Fannin, Virginia H. Snell, Denise St. Clair Kaiser, Wyatt, Tarrant & Combs, Louisville, for appellant.

Scott D. Majors, Asst. Bar Counsel Kentucky Bar Ass'n, Frankfort, for appellee.

LAMBERT, Justice.

This case comes to us by way of Supreme Court Rule 3.530 and presents the question of whether a temporary attorney service may be operated by a member of the Kentucky Bar. Appellant Alfred C.

Oliver sought an advisory opinion from the Ethics and Unauthorized Practice Committee of the Kentucky Bar Association concerning his proposed business. The Board of Governors issued a formal opinion which disapproved all temporary lawyer services. Appellant timely filed a motion for review by this Court of the KBA opinion. We granted review pursuant to SCR 3.530(5).

In his 1987 letter of inquiry, by counsel, to the Chair of the Ethics Committee, appellant proposed to furnish attorneys through his service to other attorneys, law firms and corporate legal departments needing part-time or temporary legal services. Concerning particular features, appellant specified:

1) all placed attorneys would have malpractice insurance;

2) client firms [1] would pay all fees to the service, who would then compensate the temporary attorneys and retain the excess as profit;

3) client firms would be required to supervise the temporary's work, and to assume full responsibility for that work performed by the temporary;

4) the temporary would be required to observe strict confidentiality regarding any information obtained in the course of temporary employment;

5) in order to assure that the temporary would not be placed in a conflict position, accurate records of all firms or entities with whom the temporary had been placed would be maintained, and client firms would also be required to maintain similar records.

The Ethics Committee issued a draft opinion which was unfavorable to appellant's proposal in June 1988. Despite appellant's attempt to address the Committee's objections and his personal appearance before the Board of Governors, the opinion was formally adopted and published as KBA Advisory Opinion E–328, 52 *Kentucky Bench & Bar* 64 (Fall 1988) [hereinafter "KBA E–328"].

---

1. The term "client firm" refers to any legal services entity—lawyer, law firm, corporate legal department—who contracts with the service discussed in this opinion for the procurement of a temporary lawyer. *See* Model Rule 1.10 comment. "Client firm" is here to be distinguished from a "client," who is the ultimate recipient of legal services.

· As no authority was available to guide its decision-making early in 1988, the Committee relied principally upon the American Bar Association Code of Professional Responsibility [hereinafter "Code"], adopted by SCR 3.130. The KBA opinion cites Disciplinary Rule 6–102 (hereinafter "DR 6–102") [2] and the principle that "those who would profit from the privilege of rendering legal services should be fully accountable to the client and fully subject to discipline by the Bar." KBA E–328.

The Board's second concern dealt with fee-splitting with non-lawyers and fee-sharing among lawyers who are not in the same firm "when the fee-sharing is not based on work performed and responsibility assumed. DR 2–107(2)." *Id.* The KBA took the position that if the ownership or management of the service involved non-lawyers, it would run afoul of the Code's prohibition on fee-splitting with non-lawyers. On the other hand, even if the service was run by lawyers, the service fee paid by a client to the service for the procurement of an attorney would not be an authorized splitting of the total fees paid because no legal service had been rendered nor had any legal responsibility been assumed by the temporary attorney service.

The third category of objections was simply an expression of doubt that a temporary service could succeed in avoiding conflicts of interest and guaranteeing client confidentially.

Finally, the KBA was concerned about the service supplying lawyers directly to individuals and businesses, rather than only to other lawyers. Appellant's proposal emphasized, however, that the service would not be marketed or available to non-lawyers.

Since appellant's 1987 proposal, several state bar association ethics committees and the American Bar Association Standing Committee on Ethics and Professional Responsibility have considered proposals for temporary attorney services. We note that the bar associations of Connecticut, Florida, and New York City, as well as the A.B.A.[3], have approved such services when provided in compliance with guidelines designed to avoid ethical problems under either the Code or the Model Rules of Professional Conduct [hereinafter "Model Rules"]. This Court recently adopted the Model Rules. *See* Kentucky Rules of Professional Conduct, SCR 3.130 (amended July 12, 1989, eff. January 1, 1990). We now review KBA E–328, insofar as it addresses temporary lawyer services [4], in light of the Model Rules and developing authority.

Although we share the concerns expressed by the KBA, we find that they painted with too broad a brush in banning all temporary lawyer services. We view the ABA Committee's approach to be generally thorough and well-reasoned and adopt substantial portions of its Formal Opinion 356 (1988). If a lawyer operating a temporary lawyer service in the Commonwealth of Kentucky complies with the guidelines hereinafter set forth, we believe that such a service may function within the ethical constraints of the Model Rules of Professional Responsibility. However, this opinion is advisory in nature.

We begin our discussion of the ethical implications of a temporary attorney service by addressing two issues bearing upon professional accountability.

### FEE ARRANGEMENTS

Appellant proposed initially that the client firm would pay to the service a fee to be calculated on an hourly, daily, weekly or monthly basis, depending upon the period

---

**2.** "A lawyer shall not attempt to exonerate himself from or limit his liability to his client for his personal malpractice."

**3.** *See* Connecticut Bar Ass'n, Informal Op. 15 (1988); Florida Bar Op. 12 (1988); New York City Bar Ass'n Comm. on Professional and Judicial Ethics, Formal Op. 3 (1988) [hereinafter "NYC Bar Op. 88–3"], as amended by Formal Op. 3A (1988) and Formal Op. 2 (1989); ABA Comm. on Ethics and Professional Responsibility, Formal Op. 356 (1988) [hereinafter "ABA Op. 88–356"].

**4.** We do not pass on the KBA's response to the first question posed in KBA E–328 concerning deposition and hearing services offered by a legal research corporation.

of engagement of the temporary by the firm. The temporary would be compensated by the service on the basis of the contractual agreement entered into with the service. The service's profit would be taken from the difference between the fee charged to the client firm and the compensation paid to the temporary attorney. As stated above, the KBA viewed this arrangement as an impermissible sharing of fees.

Reaching a contrary result, the American Bar Association Ethics Committee concluded that such a payment scheme does not violate either the Code or the Model Rules because the total amount paid to the service is not a "legal fee" as the term is commonly understood.

"A legal fee is paid by a client to a lawyer. Here the law firm bills the client and is paid a legal fee for services to the client. The fee paid by the client to the firm ordinarily would include the total paid the lawyer and the agency, and also may include charges for overhead and profit. There is no direct payment of a 'legal fee' by the client to the temporary lawyer or by the client to the placement agency out of which either pays the other." ABA Op. 88–356 at 12.

While this analysis of what constitutes a "legal fee" may be technically correct, we believe the arrangement proposed to the KBA has the potential to jeopardize the professional independence of the temporary attorney rendering legal services to the ultimate client.

Model Rule 5.4(c) provides:

"A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such services."

This Court is of the opinion that an attorney's primary loyalty will, as a practical matter, rest with the person or entity who pays him. Appraising a payment scheme similar to the arrangement we consider, the New York City Bar observed:

"The temporary placement agency may well seek to extend the time a lawyer spends on a particular matter or, alternatively, to have the lawyer finish one project quickly so that the lawyer is available to undertake a more lucrative project. The agency's position on such matters would be influenced chiefly by profits, not by the client's interests." NYC Bar Op. 1988–3.

For the reasons stated, we cannot approve the fee arrangement appellant proposed. However, unlike the KBA, we find an alternative mitigates our concerns substantially.

The ABA Ethics Committee approved "an arrangement whereby a law firm pays to a temporary lawyer compensation in a fixed dollar amount or at an hourly rate and pays a placement agency a fee based upon a percentage of the lawyer's compensation, does not involve the sharing of legal fees by a lawyer with a nonlawyer in violation of Rule 5.4.... There is a distinction between the character of the compensation paid to the lawyer and the compensation paid to the placement agency. The temporary lawyer is paid by the law firm for the services the lawyer performs under supervision of the firm for a client of the firm. The placement agency is compensated for locating, recruiting, screening and providing the temporary lawyer for the law firm just as agencies are compensated for placing with law firms nonlawyer personnel (whether temporary or permanent)." ABA Op. 88–356 at 12.

We perceive "no adverse impact upon the exercise of the temporary lawyer's independent professional judgment in the lawyer's work for the law firm which results from payment of a placement agency fee as a percentage of or in proportion to the lawyer's compensation." *Id.* Therefore, we would approve a fee arrangement in which the client firm pays to the temporary attorney service a fixed placement fee or a fee based upon a percentage of the temporary lawyer's compensation or duration of employment, as long as the client firm compensates the temporary lawyer directly for legal services rendered.

We further agree with the ABA "that the agreement between a temporary law-

yer and a placement agency should make clear in explicit terms that the agency will not exercise any control or influence over the exercise of professional judgment by the lawyer, including limiting or extending the amount of time the lawyer spends on work for the clients of the employing firm. Moreover, the law firm must make certain that the compensation received by the temporary lawyer is adequate to satisfy the firm that it may expect the work to be performed competently for the firm's clients. These matters fall within the responsibilities of the law firm." ABA Op. 88–356 at 13.

## DISCLOSURE TO THE CLIENT

Model Rule 7.5(d), provides:

"Lawyers may state or imply that they practice in a partnership or other organization only when that is the fact."

The underlying policy of this rule is "that a client is entitled to know who or what entity is representing the client." ABA Op. 88–356 at 9. "A question therefore arises as to whether the client must be told that a temporary lawyer engaged by the firm is working on the client's matter as well as other information relating to the arrangement between the firm and the temporary lawyer. Relevant to the inquiry are Rule 1.2(a), requiring a lawyer to consult with the client as to the means by which the client's objectives are to be pursued, and Rule 1.4 relating to client communication." *Id.* at 9–10.

"A lawyer should explain a matter to the extent reasonably necessary *to permit the client to make informed decisions regarding the representation.*" Model Rule 1.4(b).

The ABA opinion draws the distinction on the issue of disclosure between situations in which a temporary performs independent work for a client without close supervision by a client firm lawyer, and the situation where the temporary works under the direct supervision of the client firm lawyer. In the first instance, the ABA Committee would require disclosure to and consent by the ultimate client to representation by the temporary. In the latter case, however, disclosure would not be required.

"A client who retains a firm expects that the legal services will be rendered by lawyers and other personnel closely supervised by the firm. Client consent to the involvement of firm personnel ... is inherent in the act of retaining the firm." ABA OP. 88–356 at 10.

We cannot accept the ABA's distinctions and would recommend disclosure to the client of the firm's intention, whether at the commencement or during the course of representation, to use a temporary attorney service on the client's case, in any capacity, in order to allow the client to make an intelligent decision whether or not to consent to such an arrangement. Furthermore, if the client firm wishes to pass the agency or service fee on to the ultimate client, this fee should be separately identified when billed to the client. A client no more expects to pay for an employment agency than to pay for investigative or other extraordinary expenses. The client must be so informed.

The next two areas of concern to the KBA and this Court were fully addressed by the ABA Ethics Committee. We therefore adopt the following selected portions of Formal Opinion 356 (1988).

## CONFLICTS OF INTEREST

"In the Model Rules, the general conflict of interest provision is Rule 1.7, which standing alone applies only to an individual lawyer and a client about to be represented or currently represented by that lawyer. Rule 1.7 prohibits a lawyer from representing a client if the representation of that client will be directly adverse to another client or may be materially limited by the lawyer's responsibilities to another client or to a third person or by the lawyer's own interests, unless the lawyer reasonably believes that there will be no adverse effect (as described in the Rule), and the client consents after consultation." ABA Op. 88–356 at 2.

."Rule 1.9 relates to conflicts of interest involving former clients of a lawyer. It provides:

'A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation;

(b) use information relating to the representation to the disadvantage of the client except as Rule 1.6 ... would permit or require with respect to a client or when the information has become generally known.'

"It is clear that a temporary lawyer who works on a matter for a client of a firm with whom the temporary lawyer is temporarily associated 'represents' that client for purposes of Rules 1.7 and 1.9. Thus, a temporary lawyer could not, under Rule 1.7, work simultaneously on matters for clients of different firms if the representation of each were directly adverse to the other (in the absence of client consent and subject to the other conditions set forth in the Rule). Similarly, under Rule 1.9, a temporary lawyer who worked on a matter for a client of one firm could not thereafter work for a client of another firm on the same or a substantially related matter in which that client's interests are materially adverse to the interests of the client of the first firm (in the absence of consent of the former client and subject to the other conditions stated in the Rule).[5]" ABA Op. 88–356 at 2.

"The most difficult conflict of interest questions involving temporary lawyers arise under the imputed disqualification provisions of Rule 1.10, which provides:

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.

(b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a sub- stantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter.

(c) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:

(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and

(2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(b) that is material to the matter.

(d) A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in Rule 1.7.

"The basic question is under what circumstances a temporary lawyer should be treated as 'associated in a firm' or 'associated with a firm.' The question whether a temporary lawyer is associated with a firm at any time must be determined by a functional analysis of the facts and circumstances involved in the relationship between the temporary lawyer and the firm consistent with the purposes for the Rule." ABA Op. 88–356 at 3–4.

"[T]he Comment to Model Rule 1.10 notes that a rule based on functional analysis is more appropriate for determining imputed disqualification. Noting that two functions are involved, preserving confidentiality and avoiding positions adverse to a client, the Comment continues:

Preserving confidentiality is a question of access to information. Access to information, in turn, is essentially a question of fact in particular circumstances, aided by inferences, deductions or work-

---

**5.** "The consent of the current client may also be required under Rule 1.7(b)." ABA Op. 88–356 at 2 n. 2.

ing presumptions that reasonably may be made about the way in which lawyers work together. A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients. In contrast, another lawyer may have access to the files of only a limited number of clients and participate in discussion of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not those of other clients.

Application of paragraphs (b) and (c) [of Rule 1.10] depends on a situation's particular facts. In any such inquiry, the burden of proof should rest upon the firm whose disqualification is sought.

Paragraphs (b) and (c) operate to disqualify the firm only when the lawyer involved has actual knowledge of information protected by Rules 1.6 and 1.9(b). Thus, if a lawyer while with one firm acquired no knowledge of information relating to a particular client of the firm, and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two clients conflict.

\*　　\*　　\*　　\*　　\*　　\*

The second aspect of loyalty to client is the lawyer's obligation to decline subsequent representations involving positions adverse to a former client arising in substantially related matters. This obligation requires abstention from adverse representation by the individual lawyer involved, but does not properly entail abstention of other lawyers through imputed disqualification. Hence, this aspect of the problem is governed by Rule 1.9(a). Thus, if a lawyer left one firm for another, the new affiliation would not preclude the firms involved from continuing to represent clients with adverse interests in the same or related matters so long as

the conditions of paragraphs (b) and (c) concerning confidentiality have been met."

ABA Op. 88–356 at 5–6 (quoting Model Rule 1.10 Comment.)

"Ultimately, whether a temporary lawyer is treated as being 'associated with a firm' while working on a matter for the firm depends on whether the nature of the relationship is such that the temporary lawyer has access to information relating to the representation of firm clients other than the client on whose matters the lawyer is working and the consequent risk of improper disclosure or misuse of information relating to representation of other clients of the firm. For example, a temporary lawyer who works for a firm, in the firm office, on a number of matters for different clients, under circumstances where the temporary lawyer is likely to have access to information relating to the representation of other firm clients, may well be deemed to be 'associated with' the firm generally under Rule 1.10 as to all other clients of the firm, unless the firm, through accurate records or otherwise, can demonstrate that the temporary lawyer had access to information relating to the representation only of certain other clients. If such limited access can be demonstrated, then the temporary lawyer should not be deemed to be 'associated with' the firm under Rule 1.10. Also if a temporary lawyer works with a firm only on a single matter under circumstances like the collaboration of two independent firms on a single case, where the temporary lawyer has no access to information relating to the representation of other firm clients, the temporary lawyer should not be deemed 'associated with' the firm generally for purposes of application of Rule 1.10. This is particularly true where the temporary lawyer has no ongoing relationship with the firm and does not regularly work in the firm's office under circumstances likely to result in disclosure of information realting to the representation of other firm clients."

ABA Op. 88–356 at 6.

"As the direct connection between the temporary lawyers and the work on matters involving conflicts of interest between

clients of two firms becomes more remote, it becomes more appropriate not to apply Rule 1.10 to disqualify a firm from representation of its clients to to prohibit the employment of the temporary lawyer. Whether Rule 1.10 requires imputed disqualification must be determined case by case on the basis of all relevant facts and circumstances, unless disqualification is clear under the Rules.

"The distinction drawn between when a temporary lawyer is or is not associated with a firm is only a guideline to the ultimate determination and not a set rule. For example, if a temporary lawyer was directly involved in work on a matter for a client of a firm and had knowledge of material information relating to the representation of that client, it would be inadvisable for a second firm representing other parties in the same matter whose interests are directly adverse to those of the client of the first firm to engage the temporary lawyer during the pendency of the matter, even for work on other matters. The second firm should make appropriate inquiry and should not hire the temporary lawyer or use the temporary lawyer on a matter if doing so would disqualify the firm from continuing its representation of a client on a pending matter." ABA Op. 88–356 at 7.

"For the reasons discussed above, in order to minimize the risk of disqualification, firms should, to the extent practicable, screen each temporary lawyer from all information relating to clients for which the temporary lawyer does not work. All law firms employing temporary lawyers also should maintain a complete and accurate record of all matters on which each temporary lawyer works. A temporary lawyer working with several firms should make every effort to avoid exposure within those firms to any information relating to clients on whose matters the temporary lawyer is not working. Since a temporary lawyer has a coequal interest in avoiding future imputed disqualification, the temporary lawyer should also maintain a record of clients and matters worked on." *Id.*

## CONFIDENTIALITY

"Model Rule 1.6 prohibits revealing 'information relating to representation of a client,' subject to exceptions set forth in the Rule." ABA Op. 88–356 at 7. "The Rule applies to each lawyer in a firm with respect to each client of the firm and not solely to clients with whom that lawyer works. The prohibition against revealing information relating to representation of a client serves its purpose only to the extent that each lawyer with a firm (who may have information about any firm client) is bound by the rule with respect to each client of the firm. Similarly, the temporary lawyer who works for a firm on matters of a firm client is bound by Rule 1.6 not to reveal information relating to the representation of that client (except as otherwise authorized by the Rule). The temporary lawyer also is bound not to reveal information relating to representation of other clients of the firm which the temporary lawyer learns as a result of working with the firm.

"The application of Rule 1.6 does not, however, generally depend upon the source of information relating to representation of a client. Thus, a lawyer with a firm is prohibited from revealing information relating to representation of a client of the firm even if the lawyer's knowledge of the information did not arise from the representation or through the firm and even if knowledge was acquired before the lawyer-client relationship existed." ABA Op. 88–356 at 7–8.

"The extent to which the prohibitions in the Rules against revealing protected information will affect a temporary lawyer depends on the nature of the relationship between the temporary lawyer and the firm. Thus, a temporary lawyer works for a firm, in the firm office, on a number of matters for different clients, under circumstances where the temporary lawyer is likely to have access to information relating to the representation of other firm clients ordinarily would be deemed to be 'associated with' the firm as to all other clients of the firm, unless through accurate records or otherwise, it can be demonstrated that the

temporary lawyer had access to information relating to the representation only of certain other clients. If such limited access cannot be demonstrated, the temporary lawyer in that situation must not disclose information relating to the representation of persons known to the lawyer to be firm clients regardless of the source of the information." *Id.* at 8.

"Under other circumstances, however, the relationship of the firm with the temporary lawyer is more like the relationship between a firm and a totally independent lawyer. This ordinarily is the case where the temporary lawyer has been screened from access to information relating to the representation of firm clients for whom the temporary lawyer is not working, whether the temporary lawyer is working in the firm office or not. In that situation, the temporary lawyer's obligations under Rule 1.6 are ... limited to not revealing (1) information relating to the representation of any client for whom the temporary lawyer is working, and (2) information relating to the representation of other firm clients only to the extent that the temporary lawyer in fact obtains the information as a result of working with the firm.

"Thus, where the temporary lawyer is in a position to have obtained information relating to the representation of other clients in the course of employment by the firm, it is assumed for purposes of the Rules that such information was in fact learned in that capacity. On the other hand, where the temporary lawyer actually has information relating to the representation of a firm client which could not have been obtained in the course of employment by the firm, the Rule is no more applicable to the temporary lawyer than it would be to a totally independent lawyer associated with a firm

in a particular matter only, who obtains information relating to the representation of firm clients other than through working with the firm.

"The same standards apply with respect to other provisions of the Rules which relate to disclosure or use of information relating to representation of a client, such as Rule 1.8(b) prohibiting use of such information to the disadvantage of the client." ABA Op. 88–356 at 8–9.

"Supervising lawyers with the firm also have an obligation to make reasonable efforts to ensure that the temporary lawyer conforms to the rules of professional conduct, including those governing the confidentiality of information relating to representation of a client. Rule 5.1(b) and (c).[6]" ABA Op. 88–356 at 9.

## CONCLUSION

"In summary, both the temporary lawyer and the law firm hiring the lawyer must be sensitive to the need to protect and prevent misuse of information relating to the representation ... of firm clients. The application of the conflicts rules of the Model Rules depends upon all the facts and circumstances of the arrangement between the temporary lawyer and the firm in accordance with the general guidelines discussed in this opinion." ABA Op. 88–356 at 13.

Disclosure to a client on whose matters a temporary lawyer may be hired to work should be made by the client firm. As to compensation, the temporary lawyer must be paid directly by the client firm. So long as the temporary maintains independent professional judgment, free from improper influence by the temporary service, the client firm may pay service fees in a fixed

---

**6.** "Rule 5.1(b) provides: 'A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct.' Rule 5.1(c) provides: 'A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if: (1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or (2) the lawyer is a partner in the law firm in which the other lawyer practices, or has direct supervi-

sory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.' The temporary lawyer, of course, also remains subject to the rules. Rule 5.2(a) thus provides: 'A lawyer is bound by the Rules of Professional Conduct notwithstanding that the lawyer acted at the direction of another person.'" ABA Op. 88–356 at 9.

amount, at an hourly rate, or in an amount related to the extent of time worked by or compensation paid to the temporary attorney.

For the reasons set forth herein, we hereby vacate that portion of KBA Advisory Opinion E–328 which addresses the second question propounded therein and substitute this opinion in lieu thereof. As stated above, we reiterate that this opinion is advisory in nature.

STEPHENS, C.J., and GANT and LEIBSON, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion in which COMBS and VANCE, JJ., join.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because there is no convincing evidence that the temporary employment service is needed or of any benefit to the public or the legal profession.

There is no reason to believe that the traditional method used by new attorneys to approach law firms seeking employment requires intervention by a profit-making employment placement agency. Attorneys who have limited time or who wish to restrict their legal associations can do so freely on an individual basis as they have done for centuries and are still doing today.

The temporary employment service would clearly interfere with the exercise of a lawyer's professional independence. The temporary placement agency is also a fertile source of ethical violations in regard to referrals. See DR 2–103.

Only three areas in this nation have permitted the temporary employment agency posture. The mere fact that the American Bar Association has determined that such an arrangement does not violate the ABA Model Code of Professional Conduct is not persuasive. Kentucky is not bound in any way by the ABA decision. Even the three bar associations which have permitted temporary services similar to that proposed here have done so with serious reservations. The action of the majority is a step in the wrong direction. It tends to reduce the professional image of lawyers and cheapens the sacred responsibility of lawyer to client.

COMBS and VANCE, JJ., join in this dissent.